## Shelton, By et al. v. Hunter, et al.

(Decided February 4, 1915.)

### Appeal from Logan Circuit Court.

Automobiles—Frightening Animal on Street.—It is not negligence for the driver of an automobile in a city to run it within three or four feet of a mule hitched to a buggy standing on the side of the street, unless it should appear that the mule gave evidence of fright on the approach of the automobile and that this was discovered or in the exercise of ordinary care should have been discovered by the driver. The nearness to which a machine is run to an animal does not constitute negligence unless it is purposely done to cause fright or unless the driver before going near discovers, or should in the exercise of ordinary care have discovered, that running the machine close to the animal would frighten it. The duty of the driver of an automobile is the same whether it is being run within three feet or thirty feet of an animal.

BROWDER & BROWDER for appellants.

S. R. CREWDSON and SELDEN Y. TRIMBLE for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

This suit was brought by the appellant to recover damages for injuries sustained, as he alleged, through the negligent operation of an automobile. On a trial of the case there was a verdict, by direction of the court, for appellee, and the only question is the correctness of this ruling.

We think the lower court correctly ruled the case for two reasons, but as one of them will serve every useful purpose, the other need not be noticed.

The appellant was seated in a buggy, to which there was hitched a mule, on the side of the street in the city of Russellville. The mule's head was some three or four feet from a concrete foot crossing that was four or five feet wide. The automobile, which was driven by a young lady, came up the street facing the mule's head. There is some evidence that the automobile as it came up the street some distance from the mule was being run from one side of the street to the other. Whether this was due to inexperience on the part of the young lady at the wheel or was purposely done, does not appear from the record, and there is no evidence tending to show that she was either incompetent or reckless.

There is also evidence that when the automobile came to the foot crossing, which seems to have been elevated a few inches above the grade of the street, and when in about ten feet of the mule's head and while running about eight or nine miles an hour, it was turned in the direction of the mule and passed within three or four feet of him, although it might have been run some ten or fifteen feet from him.

It further appears that about the time the automobile came upon the foot crossing the mule manifested some uneasiness by raising his ears, but he did not show other symptoms of fright or attempt to run until the automobile had gotten even with or passed him. About the time the automobile got even with the mule he lunged a few times and started to run. When he started to run or possibly when he commenced lunging the appellant, Norman Shelton, a boy about thirteen years old, jumped out of the buggy. When he jumped his foot or body in some way caught in the lines, and he was dragged by the mule some distance over the street, receiving injuries that were severe and permanent.

Letting Norman tell the story of the accident in his own way, he said: "I think I was sitting there talking to somebody up the street behind me. I am not sure; and I did not hear the auto coming. It did not blow any horn that I remember of, and the first thing I saw of it was at Cook's crossing. It bounced over the crossing and swerved over into the mule, and the mule jumped and I jumped out and throwed out my foot and I got in the lines, and I tried to get that out and got the other one in, and the mule run. Q. Where was the automobile when it suddenly turned toward the mule? A. Just as it crossed the crossing. Q. Can you recollect enough to tell the jury about how close to your mule the machine got before the mule jumped? A. I reckon about ten feet. Q. What frightened the mule? A. The car coming into it and like all autos are going up grade, it was chugging away. Q. Making a noise? A. Yes sir. Q. Do you think running towards the mule frightened him and also making the noise? A. Yes sir. Q. Did it run into the mule. A. No sir; come in about ten feet of the mule; maybe a little closer. Q. It did not get out of the street very much then; the track that was traveled? A. No sir; I don't reckon it did; I don't remember very well. Q. You say the mule did not run off until the machine passed him? A. Right even with it or a little above it, he commenced get-

ting frightened at it. Q. The machine had really got past the mule before the mule run? A. Yes, sir. Q. And the machine was about opposite the mule before he showed any sign of distress, was it not? A. Of course the mule saw it before I did and he raised up his ears to it, and when it got over the crossing the mule sorter jumped to one side. Q. Jumped to one side as the machine came over the crossing? Yes sir. Q. Which side did he jump to? A. Sorter back towards the pavement. Q. And the machine had come up at that time? A. Yes sir. Q. And run on? A. Yes sir."

Mrs. Robertson, who was nearby, testified:

"Q. Did that mule this boy was driving take fright at that machine? A. When the machine got opposite the mule the mule gave a lunge and got started. Q. What did the boy do? A. He fell out of the buggy. Q. You say the mule did not start until the automobile got opposite him? A. Yes sir. Q. The machine was coming straight up the street at that time. A. Yes sir. Q. How far was it away from the mule? A. I can't tell you about that. It was going along about the middle of the street. Q. And opposite the mule before he did anything? A. Yes sir; about opposite the mule when he started."

Marion Johnson, another witness, said that the mule did not start to run until the machine got even with him; that he supposed the automobile frightened the mule, as it ran within three or four feet of him.

E. White said: "I was standing there and the auto come up over the crossing, and it kinder made a pretty good spring there, and the mule kinder scared and she sorter turned and looked the way she was running; she was running right toward the mule, and then she turned and went around the mule and the mule went down the street. I can't tell you how close he got to the mule before she turned but tolerable close. Q. You say when the machine come across the crossing it gave a bounce over the crossing? A. Yes sir. Q. And the mule frightened at that time? A. Yes sir, and started to run. Q. You didn't see the machine until it got on the crossing? A. When it went by the crossing it bounced up and I looked and the mule was scared. The mule sorter turned when she went over the crossing. Q. Up to that time the mule had not done a single thing? A. I had not seen him if he had."

E. L. McIntosh said he saw the automobile first at the crossing; that as the automobile came up the mule

jumped back, and about the time the automobile passed the mule he ran off.

It does not seem to us that this evidence was sufficient to make out a case of negligence against the operator of the machine. The horn was not sounded as the machine approached the mule, nor was there any reason why it should have been. The speed of the automobile was not excessive, nor was the conduct of the mule, until the automobile had passed him, sufficient to put a person of ordinary prudence on notice that he was frightened or likely to run off. It is true that the mule raised his ears and gave some evidence of fright when the automobile was within a few feet of him, but it was then too late to stop the machine or take any steps towards preventing the further fright of the mule other than to go ahead, and this the driver did.

It is urged by counsel for appellant that the evidence showing that as the automobile passed the crossing it turned towards the mule, passing within a few feet of him, was sufficient to take the case to the jury, as the action of the driver in letting the automobile turn toward the mule was an act of negligence and the thing that caused the mule to take fright and run off. There would be much force in this if this turn was made to frighten the mule or if the mule before this had manifested any signs of fright, but he did not, nor did the automobile touch the mule or run closer than three or four feet, or, as some of the witnesses say, eight or ten feet from him, and we do not think it can be said to be negligence to run an automobile as this one was being run within three or four feet of an animal standing on a street. It is a common, everyday occurrence for automobiles to pass within two or three feet of horses and mules standing and being driven on streets and roads, and we know of no rule of the road or provision of the automobile law that makes it negligence to do this, in the absence of evidence tending to show a purpose to frighten or that the approach of the automobile frightened the animal to such an extent as to make it the duty of the driver of the machine, in the exercise of ordinary care, to take such action as might be necessary to prevent collision or further fright. The duty of the driver of an automobile is the same whether it is being run within three feet or within thirty feet of an animal. The nearness with which a machine is run to an animal does not constitute negligence unless it is done purposely to cause fright or unless the driver, before going near,

discovers, or should in the exercise of ordinary care have discovered, that running the machine close to the animal would frighten it. And neither of these things appeared in the evidence.

Wherefore, the judgment is affirmed.